UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CT-3124-BO

| | |
|---|---|
| SAMMY USSERY, </br> Plaintiff, </br></br> v. </br></br> SGT. MANSFIELD, et al., </br> Defendants. | ) </br> ) </br> ) </br> )     O R D E R </br> ) </br> ) </br> ) |

On June 29, 2011, Sammy Ussery, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983 for excessive force and the failure to protect as well as a state law negligence claim.[1] Plaintiff names eight correctional officers as defendants.[2] Now before the court are cross motions for summary judgment. Mot. for Summ. J, Cross Mot. for Summ. J. [D.E. 73 and 76]. The parties have responded to the pending motions. Resp. [D.E. 75 and 85]. On June 11, 2014, the court held a hearing and heard arguments on the motions. In this posture, the matter is ripe for determination.

    a.    Facts

The events at issue occurred on July 9, 2008, while Ussery was housed at Bertie Correctional Institution. The suit arose from a cell extraction/use of force incident. Defendant

---

[1] No mention of the state law negligence claim is made in either of the motions before this court. The court is unclear whether it remains a pursued claim or has been abandoned.

[2] While originally filing this matter pro se, plaintiff is now represented by counsel, specifically, North Carolina Prisoner Legal Services. See, Response to Order of Investigation [30]; Notice of Appearance [D.E. 31 and 34]; Am. Compl. [D.E. 35] and Docket Sheet. Eight defendants are named in the amended complaint; however, service has not been made on Dustin Wilkins, Shelton Hardison, Stacy Hoggard, or Lillian Gilliam. Thus, the court dismisses these defendants from the suit. Fed. R. Civ. P. 4. The dismissal of those defendants is without prejudice.
Case 5:11-ct-03124-BO    Document 94    Filed 06/24/14    Page 1 of 12

Williams recorded by video camera the extraction as required by policy. With obstruction, the video documents the events.

      i.      Plaintiff's factual allegations

Defendant Mansfield and Ussery have a history of not getting along. D.E. 79, Exhibit G. Plaintiff, who is African American, contends this is based, in part, on racial tension and the use of racial slurs by Mansfield, who is Caucasian. Id., Exhibit H. In the two weeks leading up to the incident at issue, Ussery's cell was "tossed," or searched, at least five times. Id. None of the searches resulted in the discovery of any contraband or weapons. Id. On the morning of July 9, 2008, Ussery was in his cell when Mansfield approached and asked Ussery to exit his cell. Id. Ussery refused, an exchange began, and Mansfield eventually deployed a burst of pepper spray into Ussery's cell. Id. Thereafter, Mansfield exited the block and gathered staff to form an extraction team to remove Ussery from his cell. Id. Mansfield told the extraction team that Ussery had a weapon and was going to stab anyone who came into his cell. Id., Exhibit B, Video. No weapon was found on Ussery or in his cell after the extraction was completed.

The extraction team consisted of defendants Wilkens, Dunlow, Ruffin, Hardison, Hoggard, and Williams. Id. Each member was tasked with a specific responsibility upon entering the cell. Id. For the purposes of the extraction, Wilkens was assigned to the shield; Ruffin was responsible for Ussery's right arm; Hardison was responsible for Ussery's right leg; Hoggard was responsible for Ussery's left leg; Williams was responsible for recording the events with the video camera; and Mansfield was the team supervisor. Id. According to Mansfield, as team supervisor he was not supposed to enter the cell or be directly involved with the extraction unless necessity demanded it. Id., Exhibit I.

2

The extraction team arrived at the cell, Mansfield demanded Ussery exit, Ussery did not comply, and Mansfield radioed for the control booth operator to open the cell door. Id., Video. No pepper spray or other chemical agent was used at this point. Id. The cell door opened, the extraction team entered, and a disturbance can be seen on the video. Id. It also appears that someone begins to punch Ussery, but it is unclear which guard is doing so. Id. At one point, the movement of Mansfield's body suggests that Mansfield may be kicking Ussery. Id.

Ussery is eventually cuffed or shackled and carried down the stairs to the holding cell. Id. There can be no command to stand up heard on the video. Id. He was carried with his body facing toward the ground. Id. He is lifted and carried by the shackles. Id. Upon reaching the holding cell, Ussery can be seen bloody and with facial injuries. Id. He is verbally aggressive in the holding cell and can be heard threatening certain defendants. Id. Ussery received injuries consistent with being punched and kicked in the face. Id. see also, Exhibits F, "Asbell Letter" and Exhibit L, Bertie County Memorial Hospital Emergency Room Records "ER Records."

On the video, Ussery refuses medical care. Id. However after the video ends, Ussery contends that he allowed medical personnel to look at him. After being evaluated by the prison medical staff, Ussery is transported to the Emergency Room at Bertie County Memorial Hospital. The hospital records show that Ussery had tenderness, swelling, ecchymosis, contusions lacerations and abrasions to his head and face. He also had tenderness in his neck and back. Id., Exhibit L "ER Records." The wounds on Ussery's face were repaired with a wound adhesive, and Ussery was given morphine for pain as well as a prescription for pain medication when he returned to the prison. Id.

3

### ii. Defendants' factual allegations

Defendants rely on the pleadings, discovery, and affidavit of Dr. Phillip E. Stover, defendants' retained medical expert, along with Dr. Stover's expert report. Defendants' summary judgment motion is based solely on Dr. Stover's review of the medical records stating that plaintiff did not sustain significant injuries. Specifically, defendants argue that "[t]he lack of injuries gives rise to the inference that no more than de minimus force, if any at all, was employed, for which Plaintiff cannot recover." The defendants proffer the following facts in support of their summary judgment motion.

> According to Dr. Stover, Plaintiff was treated at Bertie Memorial Hospital on 9 July 2008 for abrasions, lacerations, and contusions, minor injuries which healed completely with no lasting effects. During that examination, Plaintiff made no complaints of vision problems, and both a diagnostic evaluation and a CT scan showed normally functioning eyes bilaterally and no intracranial injury, respectively. Fiver [sic] separate optometry and ophthalmology exams conducted on Plaintiff in the four years after the use of force incident also revealed that Plaintiff's eyes function normally.
>
> According to Dr. Stover, Plaintiff's claims of bilateral hand numbness are also unsubstantiated. In the year following the 2008 use of force incident, Plaintiff underwent two physical examinations, neither of which revealed any such numbness or swelling. Moreover, predating the 2008 incident, Plaintiff's medical records reveal a history of bilateral ulnar fractures, injuries that Dr. Stover identifies as the most likely explanation for any hand symptoms subsequently suffered by Plaintiff. Similarly, the hearing loss that Plaintiff attributes to the 2008 incident is contradicted by his medical records which themselves show a "long standing hearing loss" predating the incident. The only documented "loss" of hearing by Plaintiff after 9 July 2008 occurred when Plaintiff flushed his hearing aid down the toilet; NCDPS replaced the hearing aid.
>
> Plaintiff's claims of neck pain and headaches following the 2008 use of force incident is [sic] also not substantiated by his medical records. In the forty (40) sick call requests Plaintiff submitted after the incident, Plaintiff complained of neck pain only one time – on 16 July 2008 – and headaches on another lone occasion. Moreover, on the night of the incident, CT scans of Plaintiff's neck and brain showed no damage to his neck and no intracranial injury as

4

a result of the use of force against him. Finally, as for Plaintiff's purported knee pain, he made no such complaints to medical personnel at Bertie Memorial Hospital and the emergency room physician noted no injuries to Plaintiff's legs or knees. When Plaintiff was later evaluated by NCDPS personnel on 3 September 2008 for complaints of knee pain, the physical exam was negative and x-rays showed only mild arthritis and no injury attributable to the use of force incident on 9 July 2008. According to Dr. Stover, any ongoing knee pain from which Plaintiff claims to be suffering "is likely due to the arthritis and not the result of any actions by NCDPS staff that occurred on July 9, 2008." Based on Dr. Stover's thorough review of Plaintiff's medical records, Plaintiff's fabrication of his alleged injuries is a fair inference which can be drawn from the whole of the record and is more than mere supposition.

Mem. in Supp., D.E. 74, 11-14 (citations omitted).

b. Discussion

i. Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party.

Scott v. Harris, 550 U.S. 372, 378 (2007). Furthermore, a court may not "reject a plaintiff's account on summary judgment" if video evidence merely "offers *some* support for a governmental officer's version of events," but "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 276 (4th Cir. 2011) (emphasis and alterations in original) (quoting and citing Scott, 550 U.S. at 378, 380).

  ii. Qualified Immunity

Defendants assert qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). In resolving the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by Pearson v.

6

Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 555 U.S. at 242.

   iii.  Excessive Force

Ussery's first cause of action is a claim of excessive force against Sergeant Mansfield, Wilkins, Dunlow, Ruffin, Hardison, and Hoggard. The Eighth Amendment protects inmates from cruel and unusual punishment. See Wilson v. Seiter, 501 U.S. 294, 296–97 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on an excessive force claim under the Eighth Amendment, a prisoner must establish that "the officials act[ed] with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (alteration in original) (quotation omitted).

As is relevant here, within the Fourth Circuit the law was that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). However, in 2010, the Supreme Court abrogated the Fourth Circuit's standard in deciding Wilkins v. Gaddy, 559 U.S. (2010). In Wilkins, the Supreme Court made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38. According to the Wilkins Court, the relevant inquiry is "the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.' " Id. at 39 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Based on the Supreme Court's decision in Wilkins, an excessive force claim is not foreclosed merely because a plaintiff suffered

7

de minimis injury. However, the recent Fourth Circuit opinion of Hill v. Crum, 727 F.3d 312, 322-325 (4th Cir. 2013), holds that Wilkins may not be applied retroactively.

Thus, the standard of Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), controls in this case given the incident occurred before the Wilkins decision. Id. ("the 2010 holding in Wilkins cannot be imputed retroactively to an officer in this circuit whose allegedly tortious conduct predated the Wilkins decision. The applicable law for qualified immunity purposes would be that in existence in 2007, the time of the alleged assault."). "[U]nder Norman, a reasonable correctional officer would have objectively believed that the law in this circuit was what the Fourth Circuit said it was; that is, a plaintiff could not prevail on an excessive force claim absent the most extraordinary circumstances, if he had suffered only de minimis injury." Id. (internal citations omitted). "Extraordinary circumstances" are defined as those situations in which the force used is "repugnant to the conscience of mankind," or the pain suffered is so significant that it constitutes more than de minimis injury. Hill, 727 F.3d at 318, citing Norman, 25 F.3d at 1263 n. 4.

To begin, as stated in Footnote 2, service has not been made on Wilkins, Hardison, or Hoggard and they have been dismissed from the suit. Thus, the claim remains against Mansfield, Dunlow, and Ruffin.

Taking the facts in the light most favorable to plaintiff, there was some injury to plaintiff. The degree of injury suffered is at most unclear within the record before the court. The facts before the court are that there was an excessive force event resulting in a bloodied face, lacerations, and a blood stained tee shirt. The event ended with transport to the emergency room, repair of lacerations, CT scans, and the administration of morphine for pain. Second, regardless

of the extent of the injury, on the record before the court, the behavior exhibited within the video cannot and does not support dismissal. Scott, 550 U.S. at 378. It appears that the guards beat Ussery with fists, kicked him, and dragged him down the stairs by his shackles.

Thus, there remains a question of fact as to whether there are "[e]xtraordinary circumstances" so "repugnant to the conscience of mankind" that even in spite of de minimis injuries plaintiff could prevail on his excessive force claim. Hill, 727 F.3d at 318, citing Norman, 25 F.3d at 1263 n. 4. Moreover, conduct that rises to the level of "repugnant to the conscience of mankind" includes "humiliation, degradation, or torture. . . ." Id. at 324 (internal quotes omitted); see also Davis v. Lester, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001) (forcing a prisoner to be "restrained for 48 hours with all four of his limbs and his chest immobilized, lying on his back in his own urine in a cold cell" was found to be repugnant to the conscience of mankind); Peoples v. S.C. Dep't of Corr., No. 8:07–1203–CMC–BHH, 2008 WL 4442583, at *4–10 (D.S.C. Sept. 25, 2008) (plaintiffs allegations that prison officials flooded his cell with unknown "chemical munition," after which he was not allowed to seek medical attention, shower, or clean his cell, rose to the level of alleging conduct repugnant to the conscience of mankind); Acevedo v. Warner, No. 7:03CV00526, 2005 U.S. Dist. LEXIS 32332, *11–12, 15–*16 (W.D.Va. Mar. 29, 2005) (finding that beating a restrained prisoner, making racial slurs to him, and smearing feces and urine on his face was repugnant to the conscience of mankind). However, defendants do not defend the question of extraordinary circumstances with any evidence. In fact, they argue that "[i]n the final analysis, this Court need not determine what happened during the cell extraction on 9 July 2008, nor should it be dissuaded from granting summary judgment because the parties present different versions of how the cell extraction

9

transpired. Instead, it is enough to determine that Plaintiff suffered no injuries as a result of that extraction and conclude, based on Plaintiff's medical records and the expert report of Dr. Stover, that no more than de minimis force could have been employed against Plaintiff. As that scenario presents itself here, Defendants are entitled to summary judgment on Plaintiff's excessive force claim." Mem. in Supp. of Summ. J., 13-14 [D.E. 74]. Furthermore, the court notes that while no criminal charges arose from the incident against defendants, the Assistant Superintendent for Bertie Correctional, Willie Davis, Theodis Beck, the Secretary of the Department of Corrections, the SBI who was called to investigate the matter, as well as the District Attorney all found the incident of great concern, disturbing, and continued to investigate the matter. Based on the record before this court, defendants are not entitled to qualified immunity.

    iv.    Failure to Protect

Plaintiff's second claim is that his Eighth Amendment rights were violated by defendants Sergeant Williams and Unit Manager Gilliam in failing to protect him from the excessive force. Unit Manager Gilliam has not been served and has been dismissed. See Fed. R. Civ. P., Rule 4. Thus, the claim, is reviewed as against Williams.

"A prison official demonstrates deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety. In other words, the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." Brown v. North Carolina Dept. of Corrections, 612 F.3d 720, 723 (4th Cir. 2010) (citations omitted). Likewise, under the theory of bystander liability, an officer may be liable only if such officer: "(1) knows that a fellow officer is violating an individual's

constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted).

Defendant Williams was the camera operator for the extraction. There is no evidence before the court that she had any knowledge as the team gathered that any questionable events would transpire, nor was she equipped with any ability to de-escalate the events as they unfolded. She was tasked with a job which she carried out as witnessed by the video produced as evidence. Furthermore, she was not in a position to, nor has any evidence been produced to show that she had the ability to, intercede in the events as they unfolded as she video taped them. The claim against her is dismissed. Defendant Gilliam has not been served and the claim is dismissed in its entirety.

c.  Conclusion

Accordingly, the cross motions for summary judgment [D.E. 73 and 76] are GRANTED IN PART and DENIED IN PART. The motion to strike [D.E. 83] is DENIED. See Fed. R. Civ. P. 56; Fed. R. Evid. 803; and Fed. R. Civ. 902; Slate v. Byrd, 2013 WL 1103275 *2 n.5 (M.D.N.C. March 15, 2913) (unpublished). Service has not been made on Dustin Wilkins, Shelton Hardison, Stacy Hoggard, and Lillian Gilliam. Therefore, these defendants are DISMISSED from the suit without prejudice. Defendant Williams is likewise DISMISSED from the suit along with the Eighth Amendment claim for failure to protect. The parties are further DIRECTED to provide the court with an outline (jointly or separately) of a proposed plan for bringing this long pending case to resolution within 10 days of the entry of this order.

11

SO ORDERED, this the 23 day of June 2014.

*[signature: Terrence Boyle]*
TERRENCE W. BOYLE
United States District Judge